**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LONZA HOUSTON, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | NO. |
| | § | |
| MAJID RAFIQ, | § | Jury Trial Demanded |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT

Plaintiff Lonza Houston, Inc. ("Lonza") files this Complaint against Majid Rafiq ("Rafiq"), and alleges as follows:

## INTRODUCTION

1.     This is an action for breach of contract, fraud, violations of the Defend Trade Secrets Act, Texas Uniform Trade Secrets Act, and Computer Fraud and Abuse Act ("CFAA"), as well as a request for preliminary and permanent injunction.  Plaintiff Lonza operates a pharmaceutical company that develops and manufactures pharmaceuticals and also provides assistance and state-of-the art facilities to customers at all stages of development to develop and manufacture pharmaceuticals.  Defendant Rafiq is former employee of Lonza.

2.     In violation of applicable law and/or contractual obligations to Lonza, Rafiq illegally and fraudulently downloaded Lonza's confidential, proprietary, and trade secret information to a USB device that he maintained control of for nearly three months.

3.     As part of his employment with Lonza, Rafiq signed an Employee Non-Disclosure and Inventions Agreement (the "Agreement") to protect Lonza's intellectual property during and after his employment with Lonza.  As part of the Agreement, Rafiq agreed to hold in the strictest confidence and to not disclose any of Lonza's confidential, proprietary, and trade

69348708

secret information unless authorized to do so in writing.  Rafiq also agreed to not solicit, for a period of one year, any of Lonza's current or prospective customers.

4.      On his last day of work at Lonza, under the guise of transferring personal files to a USB storage device, Rafiq transferred over two-hundred documents to a USB storage device, many including Lonza's confidential, proprietary, and trade secret information.

5.      In addition, despite Rafiq's assurances to the contrary, upon forensic review Lonza discovered that Rafiq accessed Lonza's confidential, proprietary and trade secret information at the very least less than two weeks after he voluntarily left his employment with Lonza and on a work computer of his new employer, a competitor of Lonza.

6.      Lonza also uncovered that Rafiq sent numerous Lonza files containing Lonza confidential, proprietary, and trade secret information to his personal email account, including, but not limited to, shortly after Rafiq had submit his letter of resignation to Lonza.

7.      Lonza thus brings this lawsuit seeking damages and injunctive relief for Rafiq's breach of contract, fraud, theft of trade secrets under the laws of the United States and the State of Texas, and violation of the CFAA.

## PARTIES

8.      Plaintiff Lonza is a Delaware corporation, with its principal place of business at 14905 Kirby Dr, Houston, TX 77047.

9.      On information and belief, Defendant Rafiq is an individual who resides in Saint Peters, Missouri and resides at 771 Highland Hill Ct., Saint Peters, MO 63376.

## JURISDICTION

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is complete diversity of citizenship.

11.     This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331, and over the state law claims pursuant to ancillary, pendent, and supplemental jurisdiction, including under 28 U.S.C § 1367.

12.     This state has personal jurisdiction over Rafiq because, among other things, Rafiq committed tortious and illegal behavior, as outlined below, that occurred in Houston, Texas, and/or were specifically and purposefully aimed at harming Lonza in Houston, Texas, thus subjecting himself to this Court's general personal jurisdiction pursuant to due process and/or Texas Long Arm Statute, Texas Civil Practices & Remedies § 17.042.

13.     Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (b) because: (1) a substantial part of the events giving rise to the claims occurred in the Southern District of Texas; and (2) Rafiq is otherwise subject to personal jurisdiction in this venue.

<u>**FACTUAL BACKGROUND**</u>

**A.     Lonza.**

14.     Lonza is a leader in cell and gene therapy ("CGT") services.  Specifically, Lonza formulates innovative responses to its customers' unique situation and products.

15.     Lonza has affiliates worldwide that operate in and are recognized as leaders in several additional fields of pharmaceutical development and manufacturing, including but not limited to the fields of bioscience media, dosage form delivery solutions, mammalian biopharmaceuticals, and active pharmaceutical ingredients.

16.     While keeping its customers' manufacturing costs under control, Lonza follows a continuous improvement approach as the therapy progresses through the journey to commercialization. Lonza works side by side with customers, holding collaborative workshops, sending its experts to client sites and hosting Lonza's to enable clients to make the right, educated decisions on their process and manufacturing, at the right time.

17.     Lonza's unmatched experience working with regulatory bodies helps Lonza's clients to navigate the ever-changing regulatory landscape.  This model, the details of which are confidential, proprietary, and constitute a Lonza trade secret, is a significant selling point for Lonza's business and differentiates Lonza's services from Lonza's competitors.

18.     Lonza's ability to provide services at all stages of pharmaceutical development and manufacture provides a unique opportunity for its customers.  Indeed, Lonza enters into multiyear and long term multi-million dollar contracts with its customers.

19.     The relationships that Lonza has with its customers are highly dependent on the attention and service that Lonza gives to them on an ongoing basis.  Such attention enables customers to develop confidence in the quality of the products offered, the timeliness of delivery, and an increased recognition of, and familiarity with, the Lonza brand as a provider of pharmaceutical development and manufacturing services.  Indeed, repeat business with its established customers allows Lonza to maintain its strategic position in this competitive industry.

20.     Lonza also spends extensive time and substantial money identifying and maintaining key customer relationships, designing customer initiatives, determining strategic acquisitions, allocating resources for new technologies and initiatives, creating annual business and marketing plans, and developing and launching new products.  For example, Lonza works closely with its customers, suppliers, and vendors to develop customized services to meet its customers' particular specifications.

21.     Lonza is entrusted with highly sensitive trade secret information from its customers, including, but not limited to, pharmaceutical formulations at all phases of development, testing data, and business plans.

22.     To maintain these longstanding customer relationships and develop new relationships, Lonza expends substantial time, effort, and expense developing confidential,

**ORIGINAL COMPLAINT**

proprietary, and trade-secret business information across Lonza and all of its affiliates, which includes, without limitation:

i. **Lonza's products and services**, including, without limitation: detailed information about highly sensitive program offerings, including without limitation customer specific projects;

ii. **Lonza's customer information**, including, without limitation: detailed information about customer identities, requirements, quality standards, preferences, and confidential work site locations; detailed information about confidential individual customer projects, strategies, requirements, and status; methods and strategies for serving current and prospective customers; customer operational review plans; key vendor and business partner identities and work distribution; customer specific bills of materials used for production; customer specific supply chain plans and operational review plans;

iii. **Lonza's business strategies**, including, without limitation: go-to-market strategies, forecasts and plans; current and future development and expansion or contraction plans of the company overall and in key product and service lines; detailed current and historical financial data for Lonza's and Lonza affiliate's business; supply chain strategies; detailed internal resource allocation; business risk analyses; and

iv. **Lonza's internal operations**, including without limitation: information concerning personnel assignments, work force distribution, company policies and procedures, and overall internal operations of the company; training records on customer processes; detailed current and historical financial data for Lonza's and Lonza affiliate's business; business metrics, distribution, and capacities.

(collectively "confidential, proprietary, and trade secret information").

**ORIGINAL COMPLAINT**

23.     Lonza's confidential, proprietary, and trade secret information is the subject of efforts that are reasonable under the circumstances to maintain the secrecy of such information. The confidential, proprietary, and trade secret information is generally not distributed to any other party external to Lonza.  Further, Lonza does not release this information to the general public, nor could others properly acquire or duplicate it without Lonza's permission.  No one else can generate this information without knowledge of Lonza's confidential operations.  The information is specific to Lonza, which makes it nearly impossible to duplicate without detailed information from Lonza.

24.     Lonza took, and continues to take, extensive measures to safeguard its highly valuable confidential, proprietary, and trade secret information, such as requiring employees, temporary workers, and contractors to sign confidentiality agreements, requiring employees to execute acknowledgments promising to limit access to confidential information on a "need to know" basis and otherwise maintain the confidentiality of Lonza information, and requiring passwords and other security measures for access.  Lonza controls dissemination of such information even within the confines of the company, for example limiting employees abilities to transfer files to a USB storage device without prior approval.

25.     Lonza has devoted significant resources over many years to develop and compile its confidential, proprietary, and trade secret information.  The development of Lonza's confidential, proprietary, and trade-secret information represents the combined efforts of senior-level employees in a variety of departments.

26.     Lonza derives independent economic value from its confidential, proprietary, and trade secret information not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. Maintaining this information's secrecy gives Lonza a distinct economic and competitive advantage in the marketplace.

**ORIGINAL COMPLAINT**

27.     Disclosure of Lonza's confidential, proprietary, and trade secret information would be extremely valuable to Lonza's competitors.  Disclosure of Lonza's confidential, proprietary, and trade-secret information would also be extremely harmful to Lonza and undermine Lonza's position in the marketplace.

**B.     Lonza hires Rafiq.**

28.     In April 2016, Lonza extended an offer to Rafiq to join it as the Head of Program Management.  Rafiq subsequently accepted the offer and joined Lonza shortly thereafter.

29.     As part of his role at Lonza, Rafiq was responsible for managing the operation of all ongoing programs and projects at Lonza's Houston facility, including all customer projects. These responsibilities included, among others, managing the allocation of resources and personnel to ensure efficient and operational delivery of projects.  He was also responsible for updating business strategies, operational procedures, and financial summaries of Lonza.

30.     As the Head of Program Management, Rafiq maintained regular and ongoing access to Lonza's confidential, proprietary, and trade secret information, which included, but was not limited to, Lonza's customer information, business strategies, and internal operations.

**C.     Rafiq signed a binding Employee Non-Disclosure and Inventions Agreement.**

31.     Prior to joining Lonza, Rafiq signed several documents, including the Agreement. The Agreement protects Lonza's intellectual property and protects Lonza's rights in view of Rafiq's access to such confidential intellectual property as an employee at Lonza.  Specifically, in exchange for receiving Lonza's confidential, proprietary, and trade secret information, among other obligations, Rafiq agreed that he would hold in strictest confidence and would not disclose or otherwise make available any of the Confidential Information to anyone outside of Lonza and its affiliates without written consent of Lonza.

> 2.1   Definition.   "Confidential Information" means all information and material received or generated by Employee during Employee's employment with Company, including but not limited

to all ideas, suggestions, innovations, conceptions, discoveries, inventions, improvements, technological developments, methods, processes, specifications, formulae, compositions, techniques, systems, devices, computer software and programs, notes, memoranda, work sheets, lists of actual or potential customers and suppliers, works of authorship, products, data, and information in any form, which concern or relate to any aspect of the actual or contemplated business of the Company, other than information that the Employee can prove through clear and convincing evidence was in the public domain, being publicly and openly known, prior to the date of commencement of the Employee's employment by the Company or, subsequent to such date, became part of the public domain, being publicly and openly known, through lawful and proper means other than as a result of disclosure by Employee.

2.2   Use.   Employee agrees to use the Confidential information only for the purpose of performing Employee's duties and shall not use the Confidential Information for Employee's own benefit or the benefit of another.

2.3   Non-Disclosure.   Employee agrees not to disclose or otherwise make available any of the Confidential Information to anyone outside of the Company and its affiliated companies without the prior written consent of the Company.

2.4   Care.   Employee shall protect the Confidential Information using at least reasonable care.   Employee shall follow all directives and policies of the Company relating to the protection of Confidential Information.

32.   In exchange for receiving Lonza's confidential, proprietary, and trade secret information, among other obligations, Rafiq agreed to a one (1) year non-solicitation covenant regarding Lonza's current or prospective customers, as part of the Agreement.

5.   No Solicitation.   For a period of one (1) year after termination of Employee's employment with the Company for any reason and whether voluntary or involuntary, Employee will not: . . . (b) solicit or assist any person or entity in soliciting current customers or known prospective customers (i.e. an entity with whom the Company, or the Employee on behalf of the Company, had meaningful business contact during the two (2) years prior to termination of Employees employment) of the Company.

**ORIGINAL COMPLAINT**

**D.      Under the guise of obtaining personal documents, Rafiq fraudulently transfers Lonza documents including confidential, proprietary, and trade secret information to a USB storage device.**

33.      Rafiq sent a resignation letter to Lonza on May 29, 2020 identifying June 12, 2020 as his last day.

34.      Prior to Rafiq's last day at Lonza, he requested authorization to download to a USB storage device personal files from his Lonza work computer.  Rafiq requested authorization because Lonza limits Lonza employee's abilities to use USB devices as one of many efforts to protect its confidential, proprietary, and trade secret information.

35.      In reliance on Rafiq's representation, Lonza allowed Rafiq to connect a USB storage device to his Lonza work computer solely for the purpose of allowing Rafiq to transfer personal files to the device.

36.      Lonza IT personnel met with Rafiq on June 12, 2020 and allowed USB access to Rafiq's Lonza work laptop.  Lonza IT personnel instructed Rafiq that he was to transfer personal documents only.  Rafiq specifically acknowledged and confirmed that he would only transfer personal documents.

37.      In reliance on Rafiq's representations that he would only copy personal files, Lonza's IT personnel left the room to manage other work related tasks.  When Lonza's IT personnel returned, Rafiq was finishing the transfer.

38.      Rafiq is now employed by a competitor of Lonza.

39.      Upon Lonza's post departure review of Rafiq's work devices, Lonza became aware that Rafiq exceeded his authorization when he copied Lonza files from his Lonza work computer to a USB storage device.  Lonza further learned that many of the files that Rafiq transferred were not personal, but instead were Lonza files that contained Lonza confidential, proprietary, and trade secret information.

40.      Upon further review, Lonza discovered that, in addition to Rafiq exceeding authorization in copying Lonza files to a USB device, Rafiq sent Lonza confidential, proprietary,

9
**ORIGINAL COMPLAINT**

and trade secret information to his personal email address, including in his last weeks at Lonza after he had resigned and that he also utilized a USB storage device on March 3, 2020.

**E.    Lonza attempts to resolve these matters without court intervention.**

41.    On July 15, 2020, Lonza sent Rafiq an email demanding that he honor the terms of the Agreement and demanding delivery of the two known USB devices that Rafiq connected to his Lonza work computer.  Rafiq responded on July 17, 2020 stating that he would return the USB devices to Lonza and also stating "OF COURSE, I HAVE ONLY USED LONZA FILES FOR LONZA PURPOSE [sic] AND WILL NEVER USE THEM FOR ANY OTHER PURPOSE." Rafiq also claimed that the files that were transferred from his Lonza work computer to a USB storage device "were downloaded by Lonza on Site IT Security."

42.    Lonza has subsequently been able to review Rafiq's personal computer, personal email address, and USB storage device and confirmed all materials were deleted from these devices.  However, Lonza has been unable to determine whether Rafiq made copies to other devices or storage locations.

43.    Indeed, contrary to Rafiq's assertions that he never shared Lonza information with third parties, Lonza has since learned from Rafiq's new employer that Rafiq connected the USB storage device to a work computer owned by his new employer.  Lonza further learned that Rafiq then interacted with at least three Lonza files that contained Lonza confidential, proprietary, and trade secret information on a work computer owned by his new employer.

44.    These documents contain a full portfolio of Lonza customers, projects, and stages of development in all fields operated by Lonza and its affiliates, including bioscience media, dosage form delivery solutions, mammalian biopharmaceuticals, active pharmaceutical ingredients, and cell and gene therapies.  In addition, they provide detailed information about highly sensitive current and ongoing customer projects, including but not limited to, Lonza's commercial position in every division of the company, strategies and requirements to complete

10
**ORIGINAL COMPLAINT**

such projects, current and historical financial data, current and future development and expansion plans of Lonza in key product and service lines, map of Lonza technologies, and business risk analyses.

45.     Disclosure of this information would be extremely valuable to Lonza's competitors who would gain insight into Lonza's strategies and future plans to meet and exceed its customers' expectations which is a significant selling point for Lonza's business and differentiates Lonza's services from Lonza's competitors. Lonza gains independent economic value from this information not being generally known and disclosure of this information would also be extremely harmful to Lonza and undermine Lonza's position in the marketplace. Lonza took, and continues to take, extensive measures to safeguard its highly valuable confidential, proprietary, and trade-secret information such as limiting employees' ability to transfer data to USB storage devices.

46.     Lonza has uncovered at least three materially false statements Rafiq made to Lonza in an effort to hide his trade secret misappropriation:

    i.    On June 12, 2020, prior to transferring documents from his work computer, Rafiq confirmed to IT personnel that he would only transfer personal files, when in fact Rafiq transferred numerous Lonza files containing Lonza confidential, proprietary, and trade secret information;

    ii.    On July 17, 2020, after being confronted with his misappropriation, he claimed that the downloading of files from his Lonza work computer to the USB storage device was performed by "Lonza on Site IT Security," when in fact Rafiq himself managed the transfer, thereby attempting to cover up the fact that he stole Lonza information; and

    iii.    On July 17, 2020, he stated "OF COURSE, I HAVE ONLY USED LONZA FILES FOR LONZA PURPOSE [sic] AND WILL NEVER USE THEM FOR

ANY OTHER PURPOSE", when in fact he had already accessed multiple Lonza files containing confidential, proprietary, and trade secret information on, without limitation, a work computer of his new employer.

47.     Despite Lonza's efforts to resolve this matter without involvement of the Court, Rafiq's actions and false statements necessitate Lonza seeking Court intervention.

## Count One - Breach of Contract

## Disclosure of Confidential Information

48.     Lonza incorporates by reference all preceding allegations in this Complaint.

49.     The Agreement was a valid, enforceable, and binding contract between Lonza and Rafiq.

50.     Lonza fully performed its obligations under the terms of the Agreement, including employing Rafiq and providing Rafiq with access to its confidential, proprietary, and trade secret information.

51.     Under the terms of the Agreement, in exchange for employment and receiving Lonza's confidential, proprietary, and trade secret information, among other obligations, Rafiq agreed that he would:

    i.     Not disclose or otherwise make available any of Lonza's Confidential Information to anyone outside of Lonza and its affiliated companies without the prior written consent of Lonza.

52.     On information and belief Rafiq breached the Agreement by failing to honor his obligations, including at least accessing Lonza's Confidential Information on a computer owned by Rafiq's new employer and thus disclosing Confidential Information outside of Lonza.

53.     As a result of Rafiq's breach of the Agreement, Lonza has suffered damages in an amount to be determined at trial, including but not limited to the value Lonza derives from the trade secrets, which exceeds $75,000.

**ORIGINAL COMPLAINT**

54.     Under the terms of the Agreement, in addition to monetary damages, Lonza is entitled to equitable relief necessary to remedy the above breaches by Rafiq, including specific performance and injunctive relief.

55.     Additionally, Lonza is entitled to recover its attorneys' fees in being forced to bring this action under both the express terms of the Agreement and Texas Civil Practices & Remedies Code 38.001.

### Count Two - Misappropriation of Trade Secrets

### Defend Trade Secrets Act - 18 U.S.C. §§ 1832, 1836, et seq.

56.     Lonza incorporates by reference all preceding allegations in this Complaint.

57.     As set forth more fully above, Lonza's confidential, proprietary, and trade secret information includes, without limitation, Lonza's detailed customer information, business strategies, and internal operations, and all such similar information necessary for Lonza to conduct their business in a competitive marketplace.

58.     Lonza's trade secrets relate to products and services used in, or intended for use in, interstate commerce.

59.     Lonza's trade secrets are of value to Rafiq who, upon information and belief, works in the same industry as Lonza and for one of Lonza's competitors.

60.     Lonza kept their trade secrets from disclosure through all appropriate and necessary means, such that they were not generally known or available to individuals or entities outside of Lonza.

61.     Lonza's trade secrets revealed to Rafiq are critical to the success of Lonza's business and provide Lonza with a distinct competitive advantage in the marketplace of pharmaceutical development and manufacturing in the fields of cell and gene therapy, bioscience media, dosage form delivery solutions, mammalian biopharmaceuticals, and active pharmaceutical ingredients.

69348708

62.     Rafiq was aware that Lonza's trade secrets were to be kept confidential and not to be disclosed to competitors, customers, and others.

63.     Rafiq knew that the information being obtained from Lonza's computers and other sources was confidential and in the nature of trade secrets and, nevertheless, Rafiq misappropriated and utilized such information.

64.     As further set forth above, Rafiq misappropriated Lonza's trade secrets by acquiring them through unlawful means, and with intent to convert them, and/or disclosing and using them on behalf of Lonza's competitors and in derogation of Lonza's interest, and on information and belief continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C. §§1832, 1836, *et seq.*

65.     Lonza's trade secrets were transferred to and maintained on Rafiq's electronic devices, and upon information and belief, were transferred to additional devices.

66.     On information and belief, Lonza's trade secrets remain in the possession of Rafiq.

67.     Lonza cannot uncover the full extent of Rafiq's theft and misappropriation of Lonza's trade secrets without a forensic examination of Rafiq's computers and other electronic devices and storage locations.

68.     On information and belief, Rafiq continues to use Lonza's confidential, proprietary, and trade secret information, along with electronic records and documents.  Thus Rafiq's misappropriation of Lonza's trade secrets is continuing and ongoing.

69.     As a direct and proximate cause of Rafiq's wrongful conduct, Lonza has suffered or will suffer incalculable financial losses, imminent and permanent irreparable harm, loss of confidentiality of trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

69348708

70.     The losses and harm to Lonza is ongoing and cannot be remedied by damages alone.

71.     Lonza has no adequate remedy at law for sufficient compensation for the wrongs committed by Rafiq.

72.     Rafiq has acted willfully, maliciously, and with reckless disregard to the rights of Lonza.

### Count Three - Misappropriation of Trade Secrets under
### Texas Uniform Trade Secrets Act

73.     Lonza incorporates by reference all preceding allegations in this Complaint.

74.     As discussed above, Lonza is the owner of valid and enforceable trade secrets that meet the requirements under the Texas Uniform Trade Secrets Act.

75.     Rafiq misappropriated Lonza's trade secrets on and after, at least, June 12, 2020 at least by taking Lonza's trade secret information and accessing and utilizing such information after his departure from Lonza.

76.     Rafiq's conduct in misappropriating Lonza's trade secrets on and after June 12, 2020 was malicious, deliberate, and willful, or in the alternative at least grossly negligent justifying an award of punitive or exemplary damages and attorneys' fees.

77.     Rafiq's misappropriation of Lonza's trade secrets on and after June 12, 2020 has caused and will continue to cause damage to Lonza in an amount to be determined at trial.

### Count Four - Violation of Computer Fraud and Abuse Act ("CFAA")
### 18 U.S.C. § 1030

78.     Lonza incorporates by reference all preceding allegations in this Complaint.

79.     Lonza's computers are protected computers for the purposes of the CFAA, because they are used in or affect interstate or foreign commerce.

69348708

80.     In violation of the CFAA, Rafiq intentionally exceeded his authorized access to obtain and download Lonza confidential, proprietary, and trade secret information that he was not entitled to obtain when he downloaded Lonza protected files to a USB storage device on his last day at Lonza, June 12, 2020, to use in his new position at a competing business.

81.     On information and belief, Rafiq has since intentionally and willfully communicated and/or delivered such information to others at his new employer, who are not entitled to receive it.

82.     As a direct and proximate cause of Rafiq's unlawful conduct, Lonza has been damaged in amount exceeding $5,000 in forensic investigation costs to uncover and remediate his theft, specifically caused by his misappropriation, and is threatened with continuing irreparable harm.

### Count Five - Fraud

83.     Lonza incorporates by reference all preceding allegations in this Complaint.

84.     Rafiq made a false statement of material fact that he knew was false or made with culpable ignorance of their truth or falsity, and specifically that he would only transfer to a USB storage device personal files from his Lonza work computer and Lonza networks on June 12, 2020.

85.     Lonza relied upon Rafiq's false statement to its detriment.

86.     In reliance on Rafiq's representation, Lonza allowed Rafiq to connect a USB storage device to his Lonza work computer, solely for the purpose of allowing Rafiq to transfer personal files off of his work computer.

87.     Rafiq never intended to copy only his personal files to the USB storage device. Indeed, Rafiq transferred over two-hundred (200) files to the device, many including Lonza confidential, proprietary, and trade secret information.

69348708

88.     As a result of Rafiq's fraud, Lonza has suffered damages in an amount to be determined at trial, including in the form of loss of trade secrets.

## Count Six - Injunctive Relief

89.     Lonza incorporates by reference all preceding allegations in this Complaint

90.     As set forth above, Lonza is likely to succeed, and will succeed, on the merits of its claims, because Rafiq has blatantly misappropriated Lonza's confidential, proprietary, and trade secret information, including but not limited to specific and detailed customers information and accessed that information at least once since his departure from Lonza.

91.     Lonza is being irreparably harmed by, *inter alia*, the loss of its competitive advantage in the market place based on Rafiq's misappropriation, disclosure, and use of Lonza's confidential, proprietary, and trade secret information.

92.     Rafiq expressly conceded in Section 8.4 of the Agreement that Lonza would be irreparably harmed by any unauthorized disclosure or use of any of Lonza's confidential, proprietary, and trade secret information, and that Lonza could accordingly seek injunctive relief.

93.     Rafiq further agreed in Section 5 of the Agreement that for a period of one (1) year after termination of his employment with Lonza that he would not solicit or assist any other entity in soliciting Lonza's current or prospective customers.

94.     Lonza has no adequate remedy at law because money damages are not sufficient to compensate Lonza for the harm it is suffering and will continue to suffer absent injunctive relief.

95.     The balance of equities weighs heavily in Lonza's favor because Rafiq willfully breached the Agreement and willfully misappropriated Lonza's confidential, proprietary, and confidential information.

96.     By reason of the foregoing, Lonza is entitled to an injunction, preliminary and permanently enjoining Rafiq and all others acting under him or on his behalf or in concert with

69348708

him, known or unknown, from (1) acquiring, using, or disclosing Lonza's confidential, proprietary, and trade secret information and (2) contacting, soliciting, or assisting any person or entity in soliciting Lonza's key customers that are identified in the documents misappropriated by Rafiq.  Furthermore, Rafiq should be enjoined from working in pharmaceutical development and manufacturing in the fields of cell and gene therapy, bioscience media, dosage form delivery solutions, mammalian biopharmaceuticals, and active pharmaceutical ingredients for at least one (1) year.

## JURY DEMAND

97.     Lonza hereby requests a trial by jury on all issues so triable by right.

## REQUEST FOR RELIEF

WHEREFORE, Lonza respectfully requests the following relief as discussed in this Complaint:

a)      Preliminary and permanent injunctive relief, and specifically an Order directing Rafiq to refrain from acquiring, using, and/or disclosing Lonza's confidential, proprietary, and trade secret information and such other and further relief as this Court deems just;

b)      Preliminary and permanent injunctive relief, and specifically an Order directing Rafiq to refrain from contacting, soliciting, or assisting any person or entity in soliciting Lonza's key customers that are identified in the documents misappropriated by Rafiq;

c)      Preliminary and permanent injunctive relief, and specifically an Order directing Rafiq to refrain from working in pharmaceutical development and manufacturing in the fields of cell and gene therapy, bioscience media, dosage form delivery solutions, mammalian biopharmaceuticals, and active pharmaceutical ingredients for at least one (1) year;

d)      Expedited discovery, including but not limited to document production, forensic review, and deposition of all persons and entities necessary to uncover the extent of Rafiq's unlawful conduct;

69348708

e)      Any multiple of damages permitted by statute;

f)      Compensatory, consequential, economic, general, and special damages, as alleged above, in an amount and nature to be proven after the discovery of all relevant evidence and trial, including, without limitation:

1.      actual damages,

2.      lost profits,

3.      disgorgement of profits and other ill-gotten gains,

4.      reasonable royalties,

5.      established royalties,

6.      loss of value of the trade secrets,

7.      head-start damages,

8.      sweat equity damages,

9.      avoided development costs, and

10.     unjust enrichment;

g)      Punitive, exemplary, and statutory damages in excess of the jurisdictional requirements of this court;

h)      Prejudgment and post-judgment interest;

i)      Attorneys' fees and costs pursuant to the terms of the Agreement;

j)      Attorneys' fees and costs pursuant to Texas Civil Practices and Remedies Code 38.001;

k)      Attorneys' fees and costs pursuant to Texas Civil Practices and Remedies Code 134A;

l)      Attorneys' fees and costs;

69348708

Lonza further request all additional relief to which they may be legally and/or equitably entitled.

DATED:  May 5, 2021                          Respectfully submitted,

                                             **SEYFARTH SHAW LLP**

                                             By: /s/  *Jesse M. Coleman*
                                                 Jesse M. Coleman
                                                 Attorney-in-Charge
                                                 Texas Bar No. 24072044
                                                 S.D. Texas Bar No. 1101514
                                                 700 Milam Street, Suite 1400
                                                 Houston, Texas  77002-2812
                                                 Telephone: (713) 225-2300
                                                 Facsimile:  (713) 225-2340
                                                 jmcoleman@seyfarth.com

                                             ***Counsel for Lonza Houston, Inc.***

**ORIGINAL COMPLAINT**

69348708